THE TONAWANDA VALLEY AND CUBA RAILROAD COMPANY AND B. W. SPENCER, RECEIVER, APPELLANTS, *v.* THE NEW YORK, LAKE ERIE AND WESTERN RAILROAD COMPANY, RESPONDENT.

THE BRADFORD, ELDRED AND CUBA RAILROAD COMPANY AND THOMAS C. PLATT, AS RECEIVER, APPELLANTS, *v.* SAME, RESPONDENTS.

*Contract between railroad companies, to endeavor to promote each other's interests — when not void as against public policy — a plea of* ultra vires *will not lie in favor of a party who has received benefits under the contract.*

The plaintiff and defendant, each being a railroad company, entered into an agreement by which the plaintiff agreed that it would at all times deliver to the defendant, for transportation, all the freight and passengers that it could lawfully control or influence, destined to points that could be reached by

way of the railroad of the defendant, or its connections, and that it would use its influence to promote the interests and the business of the defendant company, as far as it could, with proper regard for its own interests. The defendant company agreed that, so far as it could, with a proper regard for its own interests, it would use its influence and exercise its control to promote the interests and the business of the plaintiff company; it also agreed to make good any deficiencies in the net earnings of the plaintiff company to meet the interest upon its present bonded indebtedness, from time to time, as the same should become due and payable.

It was further agreed that, for the protection of the defendant company, in rendering assistance to the plaintiff company, the latter should cause to be deposited with the defendant company a majority of the capital stock of the plaintiff company in such manner as should be required, and that, so long as the management of the plaintiff company should be satisfactory to the defendant company, the latter would give, or cause to be given, to such representatives of the plaintiff company as should be designated by it, the right to vote upon the stock so deposited.

Upon the trial of this action, brought by the plaintiff to compel the defendant to pay certain sums which the defendant had become liable to pay under the terms of the contract, the complaint was dismissed upon the ground that the contract was contrary to public policy and void.

*Held*, that it was error so to do, as the arrangement was not *per se* void.

That if the question be considered as purely one of *ultra vires*, then it was obvious that the defendant was in no condition to avail itself of that objection, as it had entered upon, and enjoyed the benefit of, the contract for a long period of time, and could not now assert that the contract was void because it (the defendant) had no power to secure its performance in the manner stipulated in the instrument.

Appeal from judgments of the New York Special Term, dismissing the complaints in each of the above entitled actions on the pleadings and opening of the plaintiffs.

In March, 1883, contracts were entered into between the plaintiff and the defendant in each of the above entitled actions, which are identically the same. By this contract the Tonawanda company agreed: " First. That it will, at all times, deliver to said Erie company, for transportation, all the freight and passengers, that it can lawfully control or influence destined to points that can be reached by way of the railroad of the Erie company or its connections, and will use its influence to promote the interests and the business of the Erie company, so far as it can, with proper regard for its own interests. Second. That for the protection of the Erie company in rendering assistance to the Tonawanda company under this contract,

it will cause to be deposited with the Erie company a majority of the capital stock of the Tonawanda company in such manner as shall be required, upon which, so long as the management of the Tonawanda company shall be satisfactory to it, the Erie company will give, or cause to be given, to such representative of the Tonawanda company as shall be designated by it, the right to vote upon the stock so deposited." The Erie company agreed: "First. That so far as it can, with a proper regard for its own interests, it will use its influence and exercise its control, to promote the interests and the business of the Tonawanda company. Second. That upon condition that the corporate control of the Tonawanda company shall become and remain vested in the Erie company, as above provided, the Erie company will make good any deficiencies in the net earnings of the Tonawanda company to meet the interest upon its present bonded indebtedness, from time to time, as the same becomes due and payable; and for any and all advances so made by it, with interest thereon, as well as for all advances made to said Tonawanda company by the Erie company for other purposes, with interest thereon, the Erie company shall have, and is hereby granted, a first lien upon the railroad franchises and property of the Tonawanda company, next after its bonded indebtedness aforesaid, and a first charge upon its surplus earnings, next after the payment of the accruing interest upon its said bonded indebtedness. This contract shall continue during the corporate existence of the companies parties hereto." It was alleged and conceded that the plaintiff companies strictly performed this agreement. The defendant company performed the agreement on its own part in the case of the Tonawanda company until the 1st day of September, 1884, advancing in the aggregate $54,000, but, on the last mentioned date, an installment of interest upon the bond debt of that company having fallen due, and there being a deficiency of earnings to meet it, the defendant company, upon demand being made under the agreement, refused to make the necessary advances, and has continued to refuse to make the necessary advances for that purpose from that time down to the present. In the case of the Bradford company the defendant made good the deficiency from time to time until the 1st day of July, 1884, advancing for that purpose over $37,000, but on the date last mentioned it refused to make good the deficiency then

existing, and has since continued to disregard its obligation. The refusal of the defendant company to perform its undertaking necessarily led to a default by the plaintiffs in the payment of interest upon their mortgaged indebtedness and to proceedings in each case for a foreclosure and the appointment of a receiver. These actions are brought to compel the defendant company to pay the sums of money which it has become liable to pay under the terms of the contracts. The motion to dismiss the complaint in each case was based upon the general ground that the contracts in question are contrary to public policy, and void.

*W. W. MacFarland,* for the appellants.

*J. Buchanan and C. Steele,* for the respondent.

DAVIS, P. J. :

These cases present identically the same questions, and they were, for that reason, argued together. The contracts upon which the actions were brought were alike in form and identical in their objects and purposes. They were mere traffic agreements, by which the parties arranged for an interchange of business for their mutual benefit and advantage, and stopping with the provisions which affect such interchange ; there would seem to be no serious question of their legality.

The plaintiff company in each case contracted " That it will at all times deliver to the Erie company for transportation all the freight and passengers that it can lawfully control or influence, destined to points that can be reached by way of the railroad of the Erie company, or its connections, and will use its influence to promote the interests and the business of the Erie company, so far as it can, with proper regard for its own interests." And the Erie company contracted that, so far as it can, with a proper regard for its own interests, it will use its influence and exercise its control to promote the interests and the business of the plaintiff company. And in consideration of the performance of the agreement on the part of the plaintiff company, the Erie company agreed to make good any deficiencies in the net earnings of that company to meet the interest upon its present bonded indebtedness from time to time, as the same becomes due and payable.

We think there is nothing in these provisions obnoxious to any

**500** TONAWANDA R. R. CO. *v.* N. Y., L. E. & W. R. R. CO.

FIRST DEPARTMENT, OCTOBER TERM, 1886.

law of this State. As collateral security for the performance of its agreement each of the plaintiff companies agrees to cause to be deposited with the Erie company a majority of the capital stock of the plaintiff company in such manner as shall be required, upon which, so long as the management of the plaintiff company shall be satisfactory to it, the Erie company will give, or cause to be given, to such representative of the plaintiff company as shall be designated by it, the right to vote upon the stock so deposited. And the promise of the Erie company to make good deficiencies in the net earnings of the plaintiff company is made upon condition that the corporate control of the plaintiff company shall become and remain vested in the Erie company as above provided.

The only question in the case is whether this provision in regard to the deposit of the stock as security for the performance by the plaintiff company of its contract, and the condition that the corporate control of the plaintiff company shall in that way become and remain vested in the Erie company, are invalid in law, and for that reason the whole contract between the parties is void. It is not contemplated that the plaintiff company shall not continue to carry on its business as a corporation by continuing to operate its railroad, as is its duty as a corporation. On the contrary, it is bound by the contract to do so in order to carry out the provisions to deliver to the Erie company all freight and passengers that it can lawfully control or influence, destined to the points mentioned. This is to be done under its own management and control so long as it performs the contract, but when it fails to perform its contract then the provision is that the Erie company may, by the exercise of the voting power of the stock deposited as collateral, place in control such a board of management as will perform the agreement. It cannot take the control itself, so that the Erie company will manage and conduct the business of the corporation, but it can appoint such officers and agents of the plaintiff company as will manage the business of that company as required by its contract. Beyond this, the contract confers no power or control upon the Erie company over the plaintiff company, and the power given is purely contingent and does not appear from anything in the case ever to have been exercised, nor does it appear that any necessity for its exercise has arisen:

It is averred by the plaintiff companies that the contract was performed on their part by the deposit of a majority of the stocks required, and that the performance of the contract by both parties was entered upon and continued until the defendant company saw fit to repudiate the same. The question arising upon these facts is an interesting one, by no means free from doubt, but we are inclined to the opinion, inasmuch as no decision is brought to our notice upon a precisely similar state of facts, that this arrangement is not *per se* void because in violation of law. If there be no question but that contracts between railway companies for the arrangement of their inter-mutual traffic may lawfully be made, by which one company may bind itself to pay stipulated sums or assume obligations to pay interest upon the bonds of the other, it is not clearly perceived why the company that undertakes so to pay may not secure the performance of the contract by arrangements which will enable it, in case of breach of the agreement, to appoint such officers or agents for the defaulting company as shall secure performance.

If the question be considered as purely one of *ultra vires*, then it is obvious that the defendant is in no condition to avail itself of that objection. It entered upon and enjoyed the benefit of the contract for a long period of time, and it is too late to assert that the contract was void because it had no power to secure its performance in the manner stipulated in the instrument. Neither company could assert such a defense after entering upon and enjoying the benefits of the contract. To avoid the agreement, the defendant must be able to assert that it was void in law as against public policy, or by reason of conflict with some provision of law, statutory or otherwise.

We are of opinion that the judgment should be reversed and new trial granted, costs to abide event.

BRADY and DANIELS, JJ., concurred.

Judgment reversed, new trial granted, costs to abide event.